**THE AGUILERA LAW GROUP, APLC**
A. Eric Aguilera (SBN 192390)
Raymond E. Brown (SBN 164819)
Kimberly R. Arnal (SBN 200448)
650 Town Center Drive, Suite 100
Costa Mesa, CA 92626
T: 714.384.6600 / F: 714.384.6601
eaguilera@aguileragroup.com
rbrown@aguileragroup.com
karnal@aguileragroup.com

Attorneys for Plaintiffs St. Paul Mercury Insurance Company, Fidelity and Guaranty Insurance Company, Travelers Property Casualty Company of America, The Travelers Indemnity Company of Connecticut, St. Paul Fire and Marine Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, a Connecticut corporation; FIDELITY AND GUARANTY INSURANCE COMPANY, an Iowa corporation; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation; THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Connecticut corporation; and FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., a Wisconsin corporation, <br><br> Plaintiffs, <br><br> v. <br><br> LEXINGTON INSURANCE COMPANY, a Delaware corporation; AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, an Illinois corporation; and DOES 1 through 10 inclusive, <br><br> Defendants | Case No. <br><br> **PLAINTIFFS' COMPLAINT FOR:** <br><br> **(1) DECLARATORY RELIEF RE DUTY TO DEFEND** <br><br> **(2) EQUITABLE CONTRIBUTION** <br><br><br> **JURY DEMAND** |

Come now Plaintiffs, St. Paul Mercury Insurance Company, Fidelity and Guaranty Insurance Company, Travelers Property Casualty Company of America, The Travelers Indemnity Company of Connecticut, St. Paul Fire and Marine Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. (collectively, "Travelers"), and plead the following allegations on information and belief in support of their complaint herein:

1.     In the present action, Travelers seeks equitable contribution from defendants Lexington Insurance Company ("Lexington") and American International Specialty Lines Insurance Company ("AISLIC") for defense fees and costs incurred by Travelers in the defense of Pulte Home Corporation ("Pulte") in the below detailed Underlying Actions.  Travelers is informed and believes that Lexington and AISLIC had a duty to defend Pulte, as alleged herein, but refused to do so based upon an improper reading of the ongoing operations language of their policies.

## JURISDICTION

2.     Plaintiffs, and each of them, are wholly owned subsidiaries of, and operate under their parent organization, The Travelers Company, Inc.  The Travelers entities involved in this action are as follows:

a. Plaintiff St. Paul Mercury Insurance Company is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut with its principal place of business in Connecticut.  St. Paul Mercury Insurance Company is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

b. Plaintiff Fidelity and Guaranty Insurance Company is now, and at all relevant times was, a corporation, existing under the laws of the State of Iowa with its principal place of business in Connecticut.  Fidelity and Guaranty Insurance Company is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

///

c.  Plaintiff Travelers Property Casualty Company of American is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut with its principal place of business in Connecticut.  Travelers Property Casualty Company of America is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

d.  Plaintiff The Travelers Indemnity Company of Connecticut is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut with its principal place of business in Connecticut.  The Travelers Indemnity Company of Connecticut is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

e.  Plaintiff St. Paul Fire and Marine Insurance Company is now, and at all relevant times was, a corporation, existing under the laws of the State of Connecticut with its principal place of business in Connecticut.  St. Paul Fire and Marine Insurance Company is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

f.  Plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. is now, and at all relevant times was, a corporation, existing under the laws of the State of Wisconsin with its principal place of business in Connecticut.  Fidelity and Guaranty Insurance Underwriters, Inc. is, and at all relevant times was, an insurance carrier eligible to do business as an insurer in the State of California.

3.    Defendants DOES 1 through 10, inclusive, are sued herein by such fictitious names because Plaintiffs are unaware of the true names and capacities of said DOE defendants.  Plaintiffs will amend this complaint to reflect the true names when the same are ascertained.  Plaintiffs are informed and believe and thereon allege that said DOE defendants are responsible for the acts, events, and circumstances alleged herein, or are interested parties to this action.

///

COMPLAINT

4.    Defendants Lexington, AISLIC, and DOES 1 to 10, are hereinafter collectively referred to as "Defendants."

5.    The amount in controversy is in excess of $1,900,000, and represents fees and costs sought in connection with the defense of the parties' mutual insureds with regard to the Underlying Actions.

6.    The Court has diversity jurisdiction.  Plaintiffs St. Paul Mercury Insurance Company, Travelers Property Casualty Company of America, The Travelers Indemnity Company of Connecticut, and St. Paul Fire and Marine Insurance Company are citizens of Connecticut.  Plaintiff Fidelity and Guaranty Insurance Company is a citizen of Iowa and Connecticut.  Plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. is a citizen of Wisconsin and Connecticut.  Defendant Lexington is a citizen of Delaware and Massachusetts.  Defendant AISLIC is a citizen of Illinois and New York.

## VENUE

7.    Plaintiffs are informed and believe and thereon allege the insurance coverage acts and/or omissions at issue in this litigation took place within the State of California.  Defendants issued insurance policies for subcontractors involved in the Underlying Actions doing business in the State of California.  Venue, therefore, lies with this Court, as one or more of the Defendants have a principal place of business in this county, one or more of the Defendants are out of State corporations and do not have a principal local office in this State such that this county is a proper venue, and/or one or more of the Defendants conduct business within this county.

## GENERAL ALLEGATIONS

8.    Plaintiffs are informed and believe and thereon allege that Defendants failed to defend Pulte with respect to the Underlying Actions under their policies of insurance alleged therein, upon the basis that Defendants' policies only afford coverage to Pulte arising out of the ongoing operations of Defendants' named

4

insureds, and that the Underlying Actions involve completed operations claims which Defendants maintain are not covered under the language of their policies of insurance.

9.     Plaintiffs are informed and believe and thereon allege that the language of the policies of insurance issued by Defendants at issue in each of the Underlying Actions is the same or substantially similar, and has been applied in a uniform pattern and practice to deny Pulte a defense to the Underlying Actions.

10.     Plaintiffs defended Pulte in the Underlying Actions, respectively, and allege that in doing so have incurred and paid in excess of their equitable share of the defense of Pulte in the Underlying Actions as a result of Defendants' practice of uniformly denying coverage on the basis that Defendants' policies only afford coverage to Pulte arising out of the ongoing operations of Defendants' named insureds and that the Underlying Actions involve completed operations claims which Defendants maintain are not covered under the language of their polices of insurance.

## THE LEXINGTON POLICIES

11.     Plaintiffs are informed and believe and thereon allege that Lexington issued the following policies:

a. California Plastering, Inc., CGL policy nos. 1125734, effective 8/21/05 – 8/21/06; 6761048, effective 8/21/06 – 8/21/07; and 6761315, effective 8/21/07 – 8/21/08.

b. Mon-May Framing Corp., Inc., CGL policy nos. 1462669, effective 6/5/05 – 6/5/06.

c. Sierra Concrete Design, Inc., CGL policy nos 1142589, effective 10/1/03 – 10/1/04; and 1143799, effective 10/1/04 – 10/1/05 (the policies listed at Paragraph 11(a)-(c) are herein referred collectively as the "Dotson Lexington Policies").

d. Leonard Roofing, Inc., CGL policy nos. 4587085, effective 4/30/05 – 4/30/06.

///

e.  Paradise Electric, CGL policy nos. 1142766, effective 12/12/03 – 12/12/04; 1144019, effective 12/12/04 – 12/12/05; 0995804, effective 4/1/05 – 10/1/05; and 1549516, effective 10/1/05 – 10/1/06.

f.  Trimco Finish, Inc., CGL policy nos. 1070404, effective 9/1/04 – 9/1/05.

g.  West Coast Interiors, Inc., CGL policy nos. 1142472, effective 9/1/03 – 9/1/04; 1143680, effective 9/1/04 – 9/1/05; and 1144878, effective 9/1/05 – 9/1/06 (the policies listed at Paragraph 11(d)-(g) are herein referred collectively as the "Mendoza Lexington Policies").

h.  Sierra Concrete Design, Inc., CGL policy nos. 1142566, effective 10/1/03 – 10/1/04; 1141488, effective 10/1/03 – 10/1/04; 1142589, effective 10/1/03 – 10/1/04; 1143812, effective 10/1/04 – 10/1/05; 1143799, effective 10/1/04 – 10/1/05; and 8761934, effective 10/1/03 – 10/1/05 (the "Boyce Lexington Policies").

i.  American Pre-Cast, CGL policy no. 1142079, effective 5/13/03 – 5/13/04.

j.  Capital Drywall, Inc., CGL policy nos. 2063174, effective 8/31/04 – 12/31/05; and 6501332, effective 12/31/05 – 12/31/06.

k.  MRD Marble, Inc. dba Flair Company, Inc., CGL policy no. 1141618, effective 11/30/02 – 11/30/03.

l.  Mays Masonry, Inc., CGL policy nos. 1143343, effective 6/1/04 – 6/1/05.

m. Southern California West Coast Electric, Inc., CGL policy no. 1143497, effective 7/10/04 – 7/10/05 (the policies listed at Paragraph 11(i)-(m) are herein referred collectively as the "Chew/Aponte Lexington Policies").

n.  Mays Masonry, Inc., CGL policy no.1143343, effective 6/1/04 – 6/1/05.

o.  Southern California West Coast Electric, Inc., CGL policy no. 1143497, effective 7/10/04 – 7/10/05 (the policies listed at Paragraph 11(n)-(o) are herein referred collectively as the "Seipel/Sheridan Lexington Policies").

p.  Brentwood Sheet Metal, CGL policy nos. 1142023, effective 4/23/03 – 4/23/04; 1143184, effective 4/23/04 – 4/23/05; and 1144431, effective 4/23/05 – 4/23/06.

q.  Coastal Construction and Lumber, CGL policy nos. 1142642, effective 10/27/03 – 10/27/04; and 1143889, effective 10/27/04 – 10/27/05.

r.  Colorific Painting, CGL policy no. 1144077, effective 1/6/05 – 1/6/06.

s.  Concord Plumbing Company, CGL policy nos. 1142672, effective 11/1/03 – 11/1/04; 1143893, effective 11/1/04 – 11/1/05; and 9289971, effective 11/1/05 – 11/1/06.

t.  Daggett Electric, Inc., CGL policy nos. 1143361, effective 6/1/04 – 6/1/05; and 1144538, effective 6/1/05 – 6/1/07.

u.  Four Seasons Heating and Air Conditioning, CGL policy no.1143528, effective 7/26/04 – 7/26/05.

v.  Halabi, Inc. dba Duracite, CGL policy no. 1142824, effective 1/7/04 – 4/7/04.

w.  J. Edwards Gish, Inc. dba Woodland Stairs & Millwork, CGL policy nos. 1142616, effective 10/8/03 – 10/8/04; 8761501, effective 11/8/05 – 11/8/06.

x.  Jerry Dellinger Concrete, Inc., CGL policy nos. 453470, effective 11/14/04 – 11/14/05; and 4136648, effective 11/14/05 – 11/14/06.

///

y.  Monschein Industries, Inc., CGL policy no. 1142887, effective 2/1/04 – 2/1/05 (the policies listed at Paragraph 11(p)-(y) are herein referred collectively as the "Sanchez Lexington Policies").

z.  Paradise Electric, Inc., CGL policy nos. 1144019, effective 12/12/04 – 12/12/05; 0995204, effective 4/1/05 – 10/1/05; and 1549516, effective 10/1/05 – 10/1/06.

aa. West Coast Interiors, Inc., CGL policy no. 1143680, effective 9/1/04 – 9/1/05 (the policies listed at Paragraph 11(z)-(aa) are herein referred collectively as the "Aviles Lexington Policies").

bb. American Coatings dba South Coast Waterproofing, CGL policy nos. 1143073, effective 4/1/04 – 4/1/05; and 1144355, effective 4/1/05 – 4/1/06.

cc. MRD Marble, Inc. dba Flair Company, CGL policy no. 1141681, effective 11/30/02 – 11/30/03.

dd. Homestead Sheet Metal, CGL policy nos. 1141963, effective 4/1/03 – 4/1/04; and 1143077, effective 4/1/04 – 4/1/06.

ee. Leonard Roofing, CGL policy no. 4587085, effective 4/30/05 – 4/30/06.

ff. Mountain Air dba Grine Corporation, CGL policy nos. 1142119, effective 6/1/03 – 6/1/04; 1143320, effective 6/1/04 – 6/1/05; and 1144553, effective 6/1/05 – 6/1/06.

gg. Safe 'N Secure Garage, CGL policy nos. 1141131, effective 5/15/02 – 5/15/03; 1143272, effective 5/15/04 – 5/15/05; and 1144491, effective 5/15/05 – 5/15/06.

hh. Trimco Finish, CGL policy no. 1070404, effective 9/1/04 – 9/1/05 (the policies listed at Paragraph 11(bb)-(hh) are herein referred collectively as the "Yeo Lexington Policies").

///

COMPLAINT

ii. Brentwood Sheet Metal, CGL policy nos. 1143184, effective 4/23/04 – 4/23/05; and 1144431, effective 4/23/05 – 4/23/06.

jj. Capital Drywall, Inc., CGL policy nos. 6462369, effective 1/1/09 – 1/1/10;

kk. Coastal Construction and Lumber, CGL policy nos. 1143889, effective 10/27/04 – 10/27/05.

ll. Colorific Painting, CGL policy nos. 1144077, effective 1/6/05 – 1/6/06; 8762089, effective 8/2/06 – 8/2/07; 4969428, effective 8/2/07 – 8/2/08; and 4969428-01, effective 8/2/08 – 8/2/09.

mm. Concord Plumbing Company, CGL policy nos. 1143893, effective 11/1/04 – 11/1/05; and 9289971, effective 11/1/05 – 11/1/06.

nn. Daggett Electric, Inc., CGL policy nos. 1143361, effective 6/1/04 – 6/1/05; 1144538, effective 6/1/05 – 6/1/06; and 7504367, effective 6/1/06 – 6/1/07.

oo. Jerry Dellinger Concrete, Inc., CGL policy no. 4136648, effective 11/14/05 – 11/14/06.

pp. Dependable Sheet Metal dba Dependable Heating and Air Conditioning, CGL policy nos. 8761544, effective 12/1/05 – 12/1/06; and 7507062, effective 12/1/06 – 12/1/07.

qq. Four Seasons Heating and Air Conditioning, CGL policy nos. 1143528, effective 7/26/04 – 7/26/05; 1144740, effective 7/26/05 – 7/26/06; and 8762082, effective 7/26/06 – 7/26/07.

rr. Peggy S. Lane, Inc. dba Cultured Marble Products, Inc., CGL policy nuos. 1143034, effective 3/24/04 – 3/24/05; and 1144307, effective 3/24/05 – 3/24/06.

ss. J. Edward Gish dba Woodland Stairs & Millwork, CGL policy nos. 8761501, effective 11/8/05 – 11/8/06; and 7506959, effective 11/8/06

1    – 11/8/07 (the policies listed at Paragraph 11(ii)-(ss) are herein

2    referred collectively as the "Derby Lexington Policies").

3    tt. American Pre-Cast, CGL policy no. 1142079, effective 5/13/03 –

4    5/13/04.

5    uu. Mays Masonry, Inc., CGL policy no. 1143343, effective 6/1/04 –

6    6/1/05.

7    vv. Southern California West Coast Electric, Inc., CGL policy no.

8    1143497, effective 7/10/04 – 7/10/05 (the policies listed at Paragraph

9    11(tt)-(vv) are herein referred collectively as the "Derby Lexington

10   Policies").

11   ww.  California Mantel, Inc., CGL policy no. 1143094, effective 4/1/04

12   – 4/1/05.

13   xx. Coastal Construction and Lumber Company, CGL policy no.

14   1142642, effective 10/27/03 – 10/27/04.

15   yy. Concord Plumbing Company, CGL policy nos. 1141585, effective

16   11/1/02 – 11/1/03; and 1142672, effective 11/1/03 – 11/1/04.

17   zz. Halabi, Inc. dba Duracite, CGL policy no. 1142824, effective 1/7/04

18   – 4/7/04.

19   aaa.  Monschein Industries, Inc., CGL policy no. 1142887, effective

20   2/1/04 – 2/1/05 (the policies listed at Paragraph 11(ww)-(aaa) are

21   herein referred collectively as the "Tuck/Gatson Lexington Policies").

22                       **THE AISLIC POLICIES**

23   12.    Plaintiffs are informed and believe and thereon allege that AISLIC

24   issued the following policies:

25   a. J. Ginger Masonry, L.P., CGL policy nos. GL933-28-69/70, effective

26   10/1/03 – 10/1/04; GL933-34-56/57, effective 10/1/04 – 10/1/05; and

27   GL155-81-56/57, effective 10/1/05 – 10/1/06 (the "Dotson AISLIC

28   Policies").

COMPLAINT

b. Fenceworks, Inc. dba Golden State Fence Company, CGL policy nos. GL9332683, effective 7/1/03 – 7/1/04; GL9333265, effective 7/1/04 – 7/1/05; GL1488398, effective 7/1/05 – 7/1/06; and GL1785140, effective 7/1/06 – 7/1/07 (the "Mendoza AISLIC Policies").

c. Fenceworks, Inc. dba Golden State Fence Company, CGL policy nos. GL9332070, effective 7/1/02 – 7/1/03; GL9332683, effective 7/1/03 – 7/1/04; GL9333265, effective 7/1/04 – 7/1/05; GL1488398, effective 7/1/05 – 7/1/06; and GL1785140, effective 7/1/06 – 7/1/07 (the "Chew/Aponte AISLIC Policies").

d. Quality Interiors, Inc., CGL policy nos. GL1507046, effective 8/1/05 – 8/1/06; GL9333356, effective 8/1/05 – 8/1/06; and GL9333357, effective 8/1/04 – 8/1/05 (the "Seipel/Sheridan AISLIC Policies").

e. Mid Cal Plastering, Inc. dba Quality Plastering, CGL policy nos. GL9333357, effective 8/1/04 – 8/1/05; and GL1507086, effective 8/1/05 – 8/1/06.

f. Peninsula Floors, Inc., CGL policy nos. 9332870, effective 10/1/03 – 10/1/04; 9332869, effective 10/1/03 – 10/1/04; 9333456, effective 10/1/04 – 10/1/05; 9333457, effective 10/1/04 – 10/1/05; 1558156, effective 10/1/05 – 10/1/06; and 1558157, effective 10/1/05 – 10/1/06 (the policies listed at Paragraph 12(e)-(f) are herein referred collectively as the "Sanchez AISLIC Policies").

g. Fenceworks, Inc. dba Golden State Fence Company, CGL policy nos. GL1488398, effective 7/1/04 – 7/1/05; and GL1785140, effective 7/1/05 – 7/1/06. (the "Aviles AISLIC Policies").

h. Crowther Prentiss Corporation, CGL policy nos. GL9333357, effective 8/1/04 – 8/1/05; and GL1507086, effective 8/1/05 – 8/1/06.

///

i.   Quality Interiors, CGL policy no. GL1507086, effective 8/1/05 – 8/1/06. (the policies listed at Paragraph 12(h)-(i) are herein referred collectively as the "Yeo AISLIC Policies").

13.   Plaintiffs are informed and believe and thereon allege that each policy issued by Defendants includes a substantially similar endorsement which provides virtually identical additional insured coverage for liability arising out of the insured's ongoing operations.

14.   Plaintiffs are informed and believe and thereon allege that, in response to each and every tender in the Underlying Actions, Defendants have applied the terms of the these endorsements to exclude coverage in a manner inconsistent with California law.

## THE UNDERLYING ACTIONS

### The Dotson Action

15.   The Dotson Action relates to allegations of construction defects of single family homes in the residential projects known as Rio Vista and Vista Verde, located in Bakersfield, California.  The plaintiff homeowners therein filed *Darlena Dotson, et al. v. Pulte Home Corporation*, Kern County Superior Court Case No. S-1500-CV-284354 (the "Dotson Action"), alleging a variety of construction defects.

16.   St. Paul Mercury Insurance Company issued to Penny Lawn Service, Inc., CGL policy nos. CK08101545, effective 5/20/04 – 5/20/11.

17.   Fidelity and Guaranty Insurance Company issued to West Coast Countertops, Inc., CGL policy nos. BK1343686, effective 4/12/03 – 4/12/04; BK01714446, effective 4/12/04 – 4/12/05; and BK02048526, effective 4/12/05 – 4/12/06.

18.   Pulte, by and through its legal representative, Koeller Nebeker Carlson and Haluck, LLP, tendered its defense and indemnity with regard to the Dotson Action to St. Paul Mercury Insurance Company and Fidelity and Guaranty Insurance Company, under their respective policies listed above.  In response, these plaintiffs

1 | agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and
2 | costs in defending Pulte in the Dotson Action.

3 |     19.    Plaintiffs are informed and believe and thereon allege that Pulte qualifies
4 | as an additional insured under the Dotson Lexington Policies and the Dotson AISLIC
5 | Policies for liability arising out of the work of the named insureds on the homes at
6 | issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington and
7 | AISLIC had a duty to defend Pulte in the Dotson Action pursuant to the terms and
8 | conditions of the Dotson Lexington Policies and the Dotson AISLIC Policies,
9 | respectively.

10 |     20.    Plaintiffs are informed and believe and thereon allege that Pulte timely
11 | tendered the defense of the Dotson Action to Lexington under the Dotson Lexington
12 | Policies and to AISLIC under the Dotson AISLIC Policies.

13 |     21.    Plaintiffs are informed and believe that Lexington and AISLIC
14 | improperly denied Pulte's tenders of defense on the ground that the Dotson Lexington
15 | Policies and the Dotson AISLIC Policies covered ongoing operations only and that
16 | the allegations in the Dotson Action involved only uncovered completed operations
17 | claims, despite the fact that the subcontractors performed work at the homes during
18 | their policy periods.

19 |     22.    Lexington and AISLIC have refused to defend Pulte in the Dotson
20 | Action under the Dotson Lexington Policies and the Dotson AISLIC Policies,
21 | respectively, and have failed to pay any amount toward the fees and costs incurred
22 | defending Pulte in the Dotson Action under said policies.

23 | **The Mendoza SB800 Notice of Claim**

24 |     23.    The Mendoza SB800 Notice of Claim relates to allegations of
25 | construction defects of single family homes in the residential projects known as
26 | Stones Throw and Water Mark, located in Lake Elsinore, California.  The plaintiff
27 | homeowners therein served the Dino and Rochelle Mendoza, et al. SB800 Notice of

28 |

COMPLAINT

Claim on Pulte(the "Mendoza SB800 Notice of Claim"), alleging a variety of construction defects.

24.     Travelers Property Casualty Company of America issued to Park West Landscape, Inc., CGL policy RTC2J-CO-0879C686, effective 10/1/05 – 10/1/06.

25.     Pulte, by and through its legal representative, Clapp Moroney Bellagamba Vucinich, Beeman and Scheley, LLP, tendered its defense and indemnity with regard to the Mendoza SB800 Notice of Claim to Travelers Property Casualty Company of America, under its policy listed above.  In response, this plaintiff agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and costs in defending Pulte in the Mendoza SB800 Notice of Claim.

26.     Plaintiffs are informed and believe and thereon allege that Pulte qualifies as an additional insured under the Mendoza Lexington Policies and the Mendoza AISLIC Policies for liability arising out of the work of the named insureds on the homes at issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington and AISLIC had a duty to defend Pulte in the Mendoza SB800 Notice of Claim pursuant to the terms and conditions of the Mendoza Lexington Policies and the Mendoza AISLIC Policies, respectively.

27.     Plaintiffs are informed and believe and thereon allege that Pulte timely tendered the defense of the Mendoza SB800 Notice of Claim to Lexington under the Mendoza Lexington Policies and to AISLIC under the Mendoza AISLIC Policies.

28.     Plaintiffs are informed and believe that Lexington and AISLIC improperly denied Pulte's tenders of defense on the ground that the Mendoza Lexington Policies and the Mendoza AISLIC Policies covered ongoing operations only and that the allegations in the Mendoza SB800 Notice of Claim involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

29.     Lexington and AISLIC have refused to defend Pulte in the Mendoza SB800 Notice of Claim under the Mendoza Lexington Policies and the Mendoza

AISLIC Policies, respectively, and have failed to pay any amount toward the fees and costs incurred defending Pulte in the Mendoza SB800 Notice of Claim under said policies.

### The Boyce Action

30.     The Boyce relates to allegations of construction defects of single family homes in the residential projects known as Saint Croix, Saint Austell, and Saint. Austell II, located in Perris, California.  The plaintiff homeowners therein filed *John Boyce, et al. v. Pulte Home Corporation*, Riverside County Superior Court Case No. MCC1300120 (the "Boyce Action"), alleging a variety of construction defects.

31.     St. Paul Mercury Insurance Company issued D.L. Long Landscaping, Inc., CGL policy nos. CK08100687, effective 7/31/03 – 7/31/05.

32.     The Travelers Indemnity Company of Connecticut issued to Jayar Manufacturing Company, CGL policy no. 660-7943B051-TCT, effective 7/1/08 – 7/1/09.

33.     Pulte, by and through its legal representative, Koeller Nebeker Carlson & Haluck LLP, tendered its defense and indemnity with regard to the Boyce Action to St. Paul Mercury Insurance Company and The Travelers Indemnity Company of Connecticut, under their respective policies listed above.  In response, these plaintiffs agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and costs in defending Pulte in the Boyce Action.

34.     Plaintiffs are informed and believe and thereon allege that Pulte qualifies as an additional insured under the Boyce Lexington Policies for liability arising out of the work of the named insureds on the homes at issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington had a duty to defend Pulte in the Boyce Action pursuant to the terms and conditions of the Boyce Lexington Policies.

35.     Plaintiffs are informed and believe and thereon allege that Pulte timely tendered the defense of the Boyce Action to Lexington under the Boyce Lexington Policies.

36.     Plaintiffs are informed and believe that Lexington improperly denied Pulte's tenders of defense on the ground that the Boyce Lexington Policies covered ongoing operations only and that the allegations in the Boyce Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

37.     Lexington has refused to defend Pulte in the Boyce Action under the Boyce Lexington Policies, and has failed to pay any amount toward the fees and costs incurred defending Pulte in the Boyce Action under said policies.

**The Chew/Aponte Consolidated Action**

38.     The Chew/Aponte Consolidated Action relates to allegations of construction defects of single family homes in the residential projects known as Solera at Oak Valley and Estates at Oak Valley, located in Beaumont, California. The plaintiff homeowners therein filed *Nolan R. & Nancy L. Chew, et al. v. Pulte Home Corporation*, Riverside County Superior Court Case No. RIC1307698 consolidated with *Lorraine Aponte, et al. v. Pulte Home Corporation*, Riverside County Superior Court Case No. RIC1403463 (the "Chew/Aponte Consolidated Action"), alleging a variety of construction defects.

39.     Travelers Property Casualty Company of America issued to Henry's Glass Company, CGL policy nos. I-680-6525H26A-TIL, effective 10/12/05 – 10/12/08; and I-680-7651M684-TIL, effective 10/12/08 – 10/12/10.

40.     St. Paul Mercury Insurance Company issued to CDL Landscape, Inc., commercial CGL policy nos. CK07100677, effective 8/1/03 – 8/1/04; and CK07100677, effective 8/1/04 – 9/9/06.

41.     St. Paul Fire and Marine Insurance Company issued to Stauffers Landscape, CGL policy no. GL08100051, effective 4/1/03 – 4/1/04.

42.     St. Paul Fire and Marine Insurance Company issued to Rescom Overhead Doors, CGL policy no. GL00200496, effective 1/31/03 – 1/31/04.

*///*

43.    Pulte, by and through its legal representative, Koeller Nebeker Carlson & Haluck LLP, tendered its defense and indemnity with regard to the Chew/Aponte Consolidated Action to Travelers Property Casualty Company of America, St. Paul Mercury Insurance Company, and St. Paul Fire and Marine Insurance Company, under their respective policies listed above.  In response, these plaintiffs agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and costs in defending Pulte in the Chew/Aponte Consolidated Action.

44.    Plaintiffs are informed and believe and thereon allege that Pulte qualifies as an additional insured under the Chew/Aponte Lexington Policies and the Chew/Aponte AISLIC Policies for liability arising out of the work of the named insureds on the homes at issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington and AISLIC had a duty to defend Pulte in the Chew/Aponte Consolidated Action pursuant to the terms and conditions of the Chew/Aponte Lexington Policies and the Chew/Aponte AISLIC Policies, respectively.

45.    Plaintiffs are informed and believe and thereon allege that Pulte timely tendered the defense of the Chew/Aponte Consolidated Action to Lexington under the Chew/Aponte Lexington Policies and to AISLIC under the Chew/Aponte AISLIC Policies.

46.    Plaintiffs are informed and believe that Lexington and AISLIC improperly denied Pulte's tenders of defense on the ground that the Chew/Aponte Lexington Policies and the Chew/Aponte AISLIC Policies covered ongoing operations only and that the allegations in the Chew/Aponte Consolidated Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

47.    Lexington and AISLIC have refused to defend Pulte in the Chew/Aponte Consolidated Action under the Chew/Aponte Lexington Policies and the Chew/Aponte AISLIC Policies, respectively, and have failed to pay any amount toward the fees and costs incurred defending Pulte in the Chew/Aponte Consolidated

1    Action under said policies.

2         **The Seipel/Sheridan Consolidated Action**

3         48.    The Seipel/Sheridan Consolidated Action relates to allegations of

4    construction defects of single family homes in the residential projects known as

5    Solera at Oak Valley and Estates at Oak Valley, located in Beaumont, California.

6    The plaintiff homeowners therein filed *Priscilla Seipel, et al. v. Pulte Home*

7    *Corporation*, Riverside County Superior Court Case No. RIC1504409 consolidated

8    with *John Sheridan, et al. v. Pulte Home Corporation*, Riverside County Superior

9    Court Case No. RIC1509586 (the "Seipel/Sheridan Consolidated Action"), alleging a

10   variety of construction defects.

11        49.    Travelers Property Casualty Company of America issued to Henry's

12   Glass Company, CGL policy nos. I-680-6525H26A-TIL, effective 10/12/05 –

13   10/12/08; and I-680-7651M684-TIL, effective 10/12/08 – 10/12/10.

14        50.    Pulte, by and through its legal representative, Koeller Nebeker Carlson

15   & Haluck LLP, tendered its defense and indemnity with regard to the Seipel/Sheridan

16   Consolidated Action to Travelers Property Casualty Company of America under its

17   policies listed above.  In response, this plaintiff agreed to defend Pulte subject to a

18   reservation of rights, and incurred defense fees and costs in defending Pulte in the

19   Seipel/Sheridan Consolidated Action.

20        51.    Plaintiffs are informed and believe and thereon allege that Pulte qualifies

21   as an additional insured under the Seipel/Sheridan Lexington Policies and the

22   Seipel/Sheridan AISLIC Policies for liability arising out of the work of the named

23   insureds on the homes at issue.  Thus, Plaintiffs are informed and believe and thereon

24   allege that Lexington and AISLIC had a duty to defend Pulte in the Seipel/Sheridan

25   Consolidated Action pursuant to the terms and conditions of the Seipel/Sheridan

26   Lexington Policies and the Seipel/Sheridan AISLIC Policies, respectively.

27        52.    Plaintiffs are informed and believe and thereon allege that Pulte timely

28   tendered the defense of the Seipel/Sheridan Consolidated Action to Lexington under

the Seipel/Sheridan Lexington Policies and to AISLIC under the Seipel/Sheridan AISLIC Policies.

53.   Plaintiffs are informed and believe that Lexington and AISLIC improperly denied Pulte's tenders of defense on the ground that the Seipel/Sheridan Lexington Policies and the Seipel/Sheridan AISLIC Policies covered ongoing operations only and that the allegations in the Seipel/Sheridan Consolidated Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

54.   Lexington and AISLIC have refused to defend Pulte in the Seipel/Sheridan Consolidated Action under the Seipel/Sheridan Lexington Policies and the Seipel/Sheridan AISLIC Policies, respectively, and have failed to pay any amount toward the fees and costs incurred defending Pulte in the Seipel/Sheridan Consolidated Action under said policies.

**The Sanchez Action**

55.   The Sanchez Action relates to allegations of construction defects of single family homes in the residential subdivisions known as Rose Garden Classics, Rose Garden Gallery, and Summerset, within the residential project known as Rose Garden, located in Brentwood, California.  The plaintiff homeowners therein filed *Rosemary Sanchez, et al. v. Pulte Home Corporation*, Contra Costa County Superior Court Case No. MSC13-00594 (the "Sanchez Action"), alleging a variety of construction defects.

56.   Travelers Property Casualty Company of America issued to AGI Shower Door and Mirror Company, CGL policy nos. 680-940D5327, effective 3/25/99 – 3/25/03; and 680-6299W740, effective 3/25/03 – 7/30/04.

57.   St. Paul Mercury Insurance Company issued to Bill Wilder Construction Company, CGL policy no. GL08100447, effective 11/1/03 – 11/1/04.

58.   Fidelity and Guaranty Insurance Underwriters, Inc. issued to Halabi, Inc. dba Duracite, CGL policy nos. BK00765852, effective 11/1/00 – 11/1/01;

1   BK00981764, effective 11/1/01 – 11/1/02; BK01237624, effective 11/1/02 – 11/1/03;

2   and BK01637266, effective 11/1/03 – 1/7/04.

3         59.     Pulte, by and through its legal representative, Clapp Moroney

4   Bellagamba Vucinich, Beeman and Scheley, LLP, tendered its defense and indemnity

5   with regard to the Sanchez Action to Travelers Property Casualty Company of

6   America, St. Paul Mercury Insurance Company, and Fidelity and Guaranty Insurance

7   Underwriters, Inc., under their respective policies listed above.  In response, these

8   plaintiffs agreed to defend Pulte subject to a reservation of rights, and incurred

9   defense fees and costs in defending Pulte in the Sanchez Action.

10        60.     Plaintiffs are informed and believe and thereon allege that Pulte qualifies

11  as an additional insured under the Sanchez Lexington Policies and the Sanchez

12  AISLIC Policies for liability arising out of the work of the named insureds on the

13  homes at issue.  Thus, Plaintiffs are informed and believe and thereon allege that

14  Lexington and AISLIC had a duty to defend Pulte in the Sanchez Action pursuant to

15  the terms and conditions of the Sanchez Lexington Policies and the Sanchez AISLIC

16  Policies, respectively.

17        61.     Plaintiffs are informed and believe and thereon allege that Pulte timely

18  tendered the defense of the Sanchez Action to Lexington under the Sanchez

19  Lexington Policies and to AISLIC under the Sanchez AISLIC Policies.

20        62.     Plaintiffs are informed and believe that Lexington and AISLIC

21  improperly denied Pulte's tenders of defense on the ground that the Sanchez

22  Lexington Policies and the Sanchez AISLIC Policies covered ongoing operations

23  only and that the allegations in the Sanchez Action involved only uncovered

24  completed operations claims, despite the fact that the subcontractors performed work

25  at the homes during their policy periods.

26        63.     Lexington and AISLIC have refused to defend Pulte in the Sanchez

27  Action under the Sanchez Lexington Policies and the Sanchez AISLIC Policies,

28  respectively, and have failed to pay any amount toward the fees and costs incurred

1  defending Pulte in the Sanchez Action under said policies.

2  **The Aviles Action**

3  64.     The Aviles Action relates to allegations of construction defects of single

4  family homes in the residential projects known as Watermark and Stone Throw,

5  located in Lake Elsinore, California.  The plaintiff homeowners therein filed *Roberto*

6  *Aviles, et al. v. Pulte Home Corporation*, Riverside County Superior Court Case No.

7  RIC1204591 (the "Aviles Action"), alleging a variety of construction defects.

8  65.     Travelers Property Casualty Company of America issued to Park West

9  Landscape, Inc., commercial general liability policies CO-0879C686-TIL, effective

10  10/1/05 – 10/1/08.

11  66.     St. Paul Mercury Insurance Company issued to D.L. Long Landscaping,

12  Inc., commercial general liability policy CK08100687, effective 7/31/04 – 7/31/05.

13  67.     Pulte, by and through its legal representative, Clapp Moroney

14  Bellagamba Vucinich, Beeman and Scheley, LLP, tendered its defense and indemnity

15  with regard to the Aviles Action to Travelers Property Casualty Company of America

16  and St. Paul Mercury Insurance Company, under their respective policies listed

17  above.  In response, these plaintiffs agreed to defend Pulte subject to a reservation of

18  rights, and incurred defense fees and costs in defending Pulte in the Aviles Action.

19  68.     Plaintiffs are informed and believe and thereon allege that Pulte qualifies

20  as an additional insured under the Aviles Lexington Policies and the Aviles AISLIC

21  Policies for liability arising out of the work of the named insureds on the homes at

22  issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington and

23  AISLIC had a duty to defend Pulte in the Aviles Action pursuant to the terms and

24  conditions of the Aviles Lexington Policies and the Aviles AISLIC Policies,

25  respectively.

26  69.     Plaintiffs are informed and believe and thereon allege that Pulte timely

27  tendered the defense of the Aviles Action to Lexington under the Aviles Lexington

28  Policies and to AISLIC under the Aviles AISLIC Policies.

70.     Plaintiffs are informed and believe that Lexington and AISLIC improperly denied Pulte's tenders of defense on the ground that the Aviles Lexington Policies and the Aviles AISLIC Policies covered ongoing operations only and that the allegations in the Aviles Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

71.     Lexington and AISLIC have refused to defend Pulte in the Aviles Action under the Aviles Lexington Policies and the Aviles AISLIC Policies, respectively, and have failed to pay any amount toward the fees and costs incurred defending Pulte in the Aviles Action under said policies.

**The Yeo Action**

72.     The Yeo Action relates to allegations of construction defects of single family homes in the residential projects known as Promontory Ridge, Westridge Villages, and Westridge Cottages, located in San Marcos, California.  The plaintiff homeowners therein filed *Annie Yeo, et al., v. Pulte Home Corporation*, San Diego County Superior Court Case No. 37-2013-00049129-CU-BC-NC (the "Yeo Action"), alleging a variety of construction defects.

73.     St. Paul Fire and Marine Insurance Company issued to Stauffers Landscape, CGL policy no. GL08100051, effective 4/1/03 – 4/1/04.

74.     Pulte, by and through its legal representative, Koeller Nebeker Carlson & Haluck, LLP, tendered its defense and indemnity with regard to the Yeo Action to St. Paul Fire and Marine Insurance Company, under its policies listed above.  In response, this plaintiff agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and costs in defending Pulte in the Yeo Action.

75.     Plaintiffs are informed and believe and thereon allege that Pulte qualifies as an additional insured under the Yeo Lexington Policies and the Yeo AISLIC Policies for liability arising out of the work of the named insureds on the homes at issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington and

AISLIC had a duty to defend Pulte in the Yeo Action pursuant to the terms and conditions of the Yeo Lexington Policies and the Yeo AISLIC Policies, respectively.

76.    Plaintiffs are informed and believe and thereon allege that Pulte timely tendered the defense of the Yeo Action to Lexington under the Yeo Lexington Policies and to AISLIC under the Yeo AISLIC Policies.

77.    Plaintiffs are informed and believe that Lexington and AISLIC improperly denied Pulte's tenders of defense on the ground that the Yeo Lexington Policies and the Yeo AISLIC Policies covered ongoing operations only and that the allegations in the Yeo Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

78.    Lexington and AISLIC have refused to defend Pulte in the Yeo Action under the Yeo Lexington Policies and the Yeo AISLIC Policies, respectively, and have failed to pay any amount toward the fees and costs incurred defending Pulte in the Yeo Action under said policies.

**The Derby Action**

79.    The Derby Action relates to allegations of construction defects of single family homes in the residential subdivisions known as Rose Garden Classics, Rose Garden Gallery, Rose Garden Estates, and Rose Garden Arbors, within the residential project known as Rose Garden, located in Brentwood, California.  The plaintiff homeowners therein filed *Wade Derby, et al. v. Pulte Home Corporation*, Contra Costa County Superior Court Case No. MSC15-02028, alleging a variety of construction defects.  The action entitled *Wade Derby, et al. v. Pulte Home Corporation*, Contra Costa County Superior Court Case No. MSC15-02028 and the underlying SB800 Notices of Claim which comprise the action are referred to here as the "Derby Action".

80.    St. Paul Mercury Insurance Company issued to Bill Wilder Construction Company, CGL policy nos. GL08100447, effective 11/1/03 – 10/1/05.

81.     Travelers Property Casualty Company of America issued to Barbosa Cabinets, CGL policy nos. Y-630-7240A860-TIL, effective 4/1/05 – 10/1/11; and Y-630-7A23109A-TIL, effective 10/1/11 – 10/1/12.

82.     Pulte, by and through its legal representative, Clapp Moroney Bellagamba Vucinich, Beeman and Scheley, LLP, tendered its defense and indemnity with regard to the Derby Action to St. Paul Mercury Insurance Company and Travelers Property Casualty Company of America, under their respective policies listed above.   In response, these plaintiffs agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and costs in defending Pulte in the Derby Action.

83.     Plaintiffs are informed and believe and thereon allege that Pulte qualifies as an additional insured under the Derby Lexington Policies for liability arising out of the work of the named insureds on the homes at issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington had a duty to defend Pulte in the Derby Action pursuant to the terms and conditions of the Derby Lexington Policies.

84.     Plaintiffs are informed and believe and thereon allege that Pulte timely tendered the defense of the Derby Action to Lexington under the Derby Lexington Policies.

85.     Plaintiffs are informed and believe that Lexington improperly denied Pulte's tenders of defense on the ground that the Derby Lexington Policies covered ongoing operations only and that the allegations in the Derby Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

86.     Lexington has refused to defend Pulte in the Derby Action under the Derby Lexington Policies, and has failed to pay any amount toward the fees and costs incurred defending Pulte in the Derby Action under said policies.

///

COMPLAINT

**The Anderson Action**

87.     The Anderson Action relates to allegations of construction defects of single family homes in the residential projects known as Solera Oak Valley, located in Beaumont, California.  The plaintiff homeowners therein filed *Martin A. Anderson, et al. v. Pulte Home Corporation*, Riverside County Superior Court Case No. RIC1307925 (the "Anderson Action"), alleging a variety of construction defects.

88.     St. Paul Fire and Marine Insurance Company issued to Stauffers Landscape, CGL policy no. GL08100051, effective 4/1/03 – 4/1/04.

89.     St. Paul Fire and Marine Insurance Company issued to Rescom Overhead Doors, CGL policy no. GL00200496, effective 1/31/03 – 1/31/04.

90.     St. Paul Mercury Insurance Company issued to Platinum Landscape, Inc., CGL policy no. CK08101360, effective 2/12/06 – 7/17/07.

91.     Travelers Property Casualty Company of America issued to Henry's Glass Company, CGL policy nos. I-680-6525H26A-TIL, effective 10/12/05 – 10/12/08; and I-680-7651M684-TIL, effective 10/12/08 – 10/12/10.

92.     Pulte, by and through its legal representative, Koeller Nebeker Carlson & Haluck, LLP, tendered its defense and indemnity with regard to the Anderson Action to St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, and Travelers Property Casualty Company of America, under their respective policies listed above.  In response, these plaintiffs agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and costs in defending Pulte in the Anderson Action.

93.     Plaintiffs are informed and believe and thereon allege that Pulte qualifies as an additional insured under the Anderson Lexington Policies for liability arising out of the work of the named insureds on the homes at issue.  Thus, Plaintiffs are informed and believe and thereon allege that Lexington had a duty to defend Pulte in the Anderson Action pursuant to the terms and conditions of the Anderson Lexington Policies.

94.     Plaintiffs are informed and believe and thereon allege that Pulte timely tendered the defense of the Anderson Action to Lexington under the Anderson Lexington Policies.

95.     Plaintiffs are informed and believe that Lexington improperly denied Pulte's tenders of defense on the ground that the Anderson Lexington Policies covered ongoing operations only and that the allegations in the Anderson Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

96.     Lexington has refused to defend Pulte in the Anderson Action under the Anderson Lexington Policies, and has failed to pay any amount toward the fees and costs incurred defending Pulte in the Anderson Action under said policies.

**The Tuck/Gatson Consolidated Action**

97.     The Tuck/Gatson Consolidated Action relates to allegations of construction defects of single family homes in the residential project known as Summerset, located in Brentwood, California.  The plaintiff homeowners therein filed *Barbara Tuck, et al. v. Pulte Home Corporation*, Contra Costa County Superior Court Case No. MSC13-00768 consolidated with *Eloise Gatson v. Pulte Home Corporation*, Contra Costa County Superior Court Case No. MSC14-00780 (the "Tuck/Gatson Consolidated Action"), alleging a variety of construction defects.

98.     Fidelity and Guaranty Insurance Underwriters, Inc. issued to Halabi, Inc. dba Duracite, CGL policy no. BK01637266, effective 11/1/03 – 1/7/04.

99.     Travelers Property Casualty Company of America issued to AGI Shower Door and Mirror Company, CGL policy no. I-680-6299W740-TIL, effective 3/25/03 – 7/30/04.

100.   The Travelers Indemnity Company of Connecticut issued to California Mantel, Inc., CGL policy no. Y-630-0319T231-TCT, effective 10/1/10 – 2/15/11.

101.   Pulte, by and through its legal representative, Clapp Moroney Bellagamba Vucinich, Beeman and Scheley, LLP, tendered its defense and indemnity

COMPLAINT

with regard to the Tuck/Gatson Consolidated Action to Fidelity and Guaranty Insurance Underwriters, Inc., Travelers Property Casualty Company of America, and The Travelers Indemnity Company of Connecticut, under their respective policies listed above.   In response, these plaintiffs agreed to defend Pulte subject to a reservation of rights, and incurred defense fees and costs in defending Pulte in the Tuck/Gatson Consolidated Action.

102.   Plaintiffs are informed and believe and thereon allege that Pulte qualifies as an additional insured under the Tuck/Gatson Lexington Policies for liability arising out of the work of the named insureds on the homes at issue.   Thus, Plaintiffs are informed and believe and thereon allege that Lexington had a duty to defend Pulte in the Tuck/Gatson Consolidated Action pursuant to the terms and conditions of the Tuck/Gatson Lexington Policies.

103.   Plaintiffs are informed and believe and thereon allege that Pulte timely tendered the defense of the Tuck/Gatson Consolidated Action to Lexington under the Tuck/Gatson Lexington Policies.

104.   Plaintiffs are informed and believe that Lexington improperly denied Pulte's tenders of defense on the ground that the Tuck/Gatson Lexington Policies covered ongoing operations only and that the allegations in the Tuck/Gatson Consolidated Action involved only uncovered completed operations claims, despite the fact that the subcontractors performed work at the homes during their policy periods.

105.   Lexington has refused to defend Pulte in the Tuck/Gatson Consolidated Action under the Tuck/Gatson Lexington Policies, and has failed to pay any amount toward the fees and costs incurred defending Pulte in the Tuck/Gatson Consolidated Action under said policies.

106.   The Dotson Action, the Mendoza SB800 Notice of Claim, the Boyce Action, the Chew/Aponte Consolidated Action, the Seipel/Sheridan Consolidated Action, the Sanchez Action, the Aviles Action, the Yeo Action, the Derby Action, the

Anderson Action, and the Tuck/Gatson Consolidated Action, are collectively referred to herein as the "Underlying Actions."

107. Lexington and AISLIC are in possession of their respective aforementioned policies of insurance and know the terms and contents thereof, to an equal or greater extent than Plaintiffs.  However, on information and belief, Plaintiffs allege that the aforementioned respective policies issued by Lexington and AISLIC provide an insuring agreement and are written on standard forms which provide, in part, an agreement to defend any insured from and against suits seeking damages potentially covered under the insurance policies and to pay any amounts the insured is legally obligated to pay for covered damages.

108. To date, Plaintiffs have paid an amount in excess of $1,900,000 in defense of the Underlying Actions under their aforementioned policies alleged therein.

109. Plaintiffs are informed and believe and thereon allege each of the policies issued by defendants identified herein fictitiously as DOES 1 to 10 obligates them to defend Pulte in the Underlying Actions as a named insured or additional insured therein.

110. Plaintiffs are informed and believe and thereon allege Pulte timely tendered its defense of the Underlying Actions, respectively to defendants identified herein fictitiously as DOES 1 to 10 under the policies of insurance issued by DOES 1 to 10 pursuant to which Pulte qualifies as a named insured or additional insured.

111. Plaintiffs are informed and believe and thereon allege defendants identified herein fictitiously as DOES 1 to 10 have refused to defend Pulte and have failed to pay any amount toward the fees and costs defending Pulte in the Underlying Actions under the policies of insurance issued by DOES 1 to 10 pursuant to which Pulte qualifies as a named insured or additional insured.

\\\

\\\

**FIRST CAUSE OF ACTION**

**DECLARATORY RELIEF RE DUTY TO DEFEND**

**(By Plaintiffs Against All Defendants)**

112.   Plaintiffs hereby re-allege and incorporate by reference each allegation contained in all preceding paragraphs of this complaint as though fully set forth herein.

113.   Plaintiffs have agreed to provide Pulte with a defense to the Underlying Actions, subject to a reservation of rights.

114.   Plaintiffs are informed and believe and thereon allege Defendants contend that they do not have an obligation to provide Pulte with a defense to the Underlying Actions.   Plaintiffs, on the other hand, contend that Defendants are required to defend Pulte, and are required to pay their equitable share of said defense costs incurred in the Underlying Actions.   Consequently, an actual controversy has arisen and now exists between Plaintiffs and Defendants concerning each party's obligations to defend Pulte in the Underlying Actions.

115.   A declaration by this Court of each party's defense obligation is necessary and appropriate at this time so that Plaintiffs and Defendants can determine their obligations and duties with respect to the defense of Pulte in the Underlying Actions.   Plaintiffs have no adequate or speedy remedy at law.   Therefore, it is necessary for the court to adjudicate the rights, duties and obligations of the parties with respect to providing Pulte with a defense to the Underlying Actions.

**SECOND CAUSE OF ACTION**

**EQUITABLE CONTRIBUTION**

**(By Plaintiffs Against All Defendants)**

116.   Plaintiffs hereby re-allege and incorporate by reference each allegation contained in all preceding paragraphs of this complaint as though fully set forth herein.

///

COMPLAINT

117.   Plaintiffs have agreed to defend Pulte in the Underlying Actions, respectively, as an additional insured against the claims asserted in the Underlying Actions, pursuant to the terms and conditions of the policies of insurance issued by Plaintiffs respectively, and subject to a reservation of their rights.

118.   Plaintiffs are informed and believe and thereon allege the policy(ies) issued by Defendants provide liability insurance to Pulte, designating Pulte as a named insured or additional insured thereon as to the Underlying Actions, respectively.   Plaintiffs are further informed and believe and thereon allege the allegations made, pleaded or otherwise asserted against Pulte in the Underlying Actions, if true, set forth claims for damages potentially covered under the policies issued by Defendants.

119.   As such, Defendants, and each of them, are obligated to participate in the defense of Pulte in the Underlying Actions by reason of their respective underwritten policies of insurance, which provide an agreement to undertake the duty to defend suits seeking damages from bodily injury or property damage potentially covered under their respective policies.

120.   All conditions precedent to the obligations of Defendants under their respective policies of insurance have been satisfied, waived, and/or excused.   The obligations of Defendants to defend Pulte is currently due and owing.

121.   Defendants, and each of them have to date failed to participate in the defense of Pulte, and/or failed to contribute a full and equitable share toward Plaintiffs' costs of defending Pulte which have been incurred and which are being incurred in connection with the Underlying Actions.

122.   By reason of the failure of Defendants to discharge their obligations and equitably participate in the defense of Pulte, Plaintiffs have incurred and/or paid, and will incur and/or pay, more costs than they would have, had Defendants agreed to defend and/or contribute a full and equitable share to the defense of Pulte in the

Underlying Actions in performance of their due and owing obligations under their respective insurance policies.

123.  The failure of Defendants to discharge their obligations under their respective policies of insurance is wrongful and thus causing an inequitable result, in that Plaintiffs are paying and have paid more than their equitable share of the costs of defending Pulte in the Underlying Actions without the participation of Defendants in paying for such costs.

124.  Because of their wrongful failure to discharge their obligations under their respective policies of insurance, Plaintiff s are entitled to an award of equitable contribution, to reimburse them for costs equivalent to the fair and equitable proportionate share of Defendants of the total costs of defense incurred in connection with the claims against Pulte in the Underlying Actions, with interest thereon at the prescribed legal rate.

WHEREFORE, Plaintiffs pray for judgment, as follows:

## ON THE FIRST CAUSE OF ACTION

1.  For a declaration that Defendants, and each of them, are obligated to defend Pulte in the Underlying Actions.

2.  For a declaration that Defendants, and each of them, are required to reimburse Plaintiffs for each Defendants' share of defense fees and costs incurred by Plaintiffs in connection with the Underlying Actions.

## ON THE SECOND CAUSE OF ACTION

1.  For a declaration that Plaintiffs are entitled to reimbursement of defense fees and costs incurred by Plaintiffs in providing Pulte with a defense to the Underlying Actions.

2.  For an order compelling Defendants to reimburse Plaintiffs for Defendants' equitable share of the defense fees and costs incurred by Plaintiffs in providing Pulte with a defense to the Underlying Actions.

///

## ON ALL CAUSES OF ACTION

1.  For prejudgment interest.

2.  For costs of suit herein.

2.  For reasonable attorneys' fees and expenses.

4.  For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Fed. R. Civ. Proc. 38(b).

Dated: February 8, 2019          **THE AGUILERA LAW GROUP, APLC.**

A. Eric Aguilera, Esq.
Raymond E. Brown, Esq.
Kimberly R. Arnal, Esq.
Attorneys for Plaintiffs St. Paul Mercury Insurance Company, Fidelity and Guaranty Insurance Company, Travelers Property Casualty Company of America, The Travelers Indemnity Company of Connecticut, St. Paul Fire and Marine Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.

COMPLAINT